WILLIAM F. LENNON, Appellant, *v.* MARY A. STILES,
Respondent.

*Supreme Court, First Department, General Term, March* 24, 1889.

1. *Specific performance.*—In actions for the specific performance of a
   contract to exchange real estate, it is discretionary with the court
   to grant such relief; and where, for any reason, the enforcement
   will be against conscience and justice, it will be refused.
2. *Same. Evidence.*—In such an action, a conversation between de-
   fendant's agent, who negotiated the contract, and a proposed
   purchaser of one of the houses which plaintiff was to convey to
   defendant, in the absence of plaintiff, is entirely competent for the
   purpose of showing the circumstances under which the contract
   with such purchaser was made, and the inducements which led
   thereto, as a part and parcel of the whole transaction.
3. *Same.*—So also, evidence showing the condition and circumstances
   under which the contract was to be delivered, and what was said
   to induce defendant to sign it, is competent.
4. *Same. Finding.*—A finding that plaintiff had a desk with a certain
   firm is warranted, when a member of the firm so testifies, and it
   appears that the plaintiff had a sign at the firm's office.
5. *Appeal.*—The admission of immaterial testimony, which does the
   appellant no harm, is no ground for granting a new trial.

Action for specific performance of a contract by defend-
ant to exchange a house and lot with plaintiff for two
houses and lots. Complaint was dismissed.

Appeal from judgment on dismissal of complaint.

The following opinion was rendered on dismissal of
complaint:

INGRAHAM, J.—In actions for the specific performance of
a contract to convey land, granting the relief asked for,
rests in the discretion of the court, and if for any reason
the contract is unfair or unreasonable, or in consequence of
the relation of the parties to the contract, or the circum-

10

stances of the case, an unfair advantage has been taken, or where, for any reason, the enforcement of the contract would be against conscience and justice, specific performance will be refused.

Thus, in Seymour *v.* Delancy (3 Cowen, 521), SAVAGE, C. J. states the rule to be :

" That on the question of decreeing specific performance of executory contracts, the court of chancery must exercise its discretion ; not an arbitrary, but a sound judicial discretion. If the contract be free from objection, it is the duty of the court to decree performance. But if there are circumstances of unfairness, though not amounting to fraud or oppression, or if the inadequacy of consideration be so great as to render the bargain hard and unconscionable, on either ground, the court may refuse its aid to enforce the contract, and leave the parties to contest the right in a court of law." And SUDAM, senator, says : " I also admit that the party claiming the specific performance must present a case fair, just and reasonable ; that the contract must be founded on adequate consideration, and it must be free from fraud, misrepresentation, deceit or surprise."

And this rule has again and again been reiterated.

In Peters *v.* Delaplaine, *et al.*, CHURCH, J., says : " The granting or withholding specific performance is within the discretion of the court. It will not be granted where it would be against conscience and justice to do so." And in Margraf *v.* Muir (57 N. Y. 158), EARL, commissioner, says : " When a contract for the sale of land is fair and just, free from legal objection, it is a matter of course for courts of equity to specifically enforce it. But they will not decree specific performance in case of fraud or mistake, or of hard or unconscionable bargains, or where the decree would produce injustice, or where such a decree would be inequitable under all the circumstances."

In this case, a widow in feeble health was spending the summer in Massachusetts. She was the owner of real

estate in New York, and depending upon the income of her property, including the premises in question, for her support.

A broker suggested to her son-in-law, Cornwall, the exchange of the property, for which the contract in question was subsequently made, with the knowledge of the defendant. Cornwall and the plaintiff then commenced the negotiations that led up to the contract in question.

The controlling desire of Cornwall appears to have been a desire to get some money for the defendant out of the exchange, and in order to carry out that intention it was necessary to get a purchaser for one of the houses which plaintiff was to convey to the defendant. The firm of Darling & Schwannecke then appeared with a Mr. Stern as a purchaser of one of plaintiff's houses, for $23,500. Stern signed a contract to purchase at that price, which was deposited with the firm of brokers in escrow, and at the same time Stern deposited $250, as the amount to be paid in cash on the execution of the contract. This apparently being satisfactory to Cornwall, he took the contract in question and the contract with Stern to the defendant, in Massachusetts. He stated to her that one of the houses could be sold for $23,400, and that the other was rented for $1,500, and finally induced her to sign the contract, she directing him not to deliver the contract in question until the money to be received by her for the house that she was about to sell to Stern was actually paid. Cornwall then came back to New York, met the plaintiff and Stern at Darling & Co.'s office, and there finally delivered the contract to Stern, and the plaintiff paid $350 on the contract, most of which was at once appropriated by Darling & Co., for their commission.

Neither of the plaintiff's houses were, in fact, rented, and it is evident that Stern never had the slightest idea of completing his contracts, or even made the slightest effort to have the title examined, or to do anything about it. The

whole circumstances surrounding the transaction are extremely suspicious. The evident incapacity of Cornwall to conduct such a negotiation, the connection between the plaintiffs and the brokers who acted for Stern, the admission by the broker that he went to Cornwall about Stern at the plaintiff's suggestion, the action of Stern after he had signed the contract, and many other facts, tend strongly to show that there was a combination between the plaintiff and Darling & Co., to get possession of defendant's property; but, without expressly deciding that question, that there was such a fraud as would be a defense to an action at law, it is evident that this is not such a contract as the court, in the exercise of its discretion, should specifically enforce.

Considering the circumstances of the case, the exchange was a very unfair one. Plaintiff's houses were not rented, and were producing nothing, although largely mortgaged.

Defendant's house was well rented, producing a good income; and I am satisfied that plaintiff's houses were not salable at anything like the price at which they were exchanged. Plaintiff knew well the condition of the property, and it is evident that he took advantage of Cornwall's evident incapacity to get from the defendant a contract that had she been acquainted with the circumstances, she never would have signed.

Applying the rule above stated, I think it is the duty of the court to refuse specific performance, and leave the plaintiff to his remedy at law.

The equitable relief being denied, according to our practice, the action may be held to enable the plaintiff to continue the action to recover his damages at law. Fitzpatrick v. Dorland, 27 Hun, 294. Or, if the plaintiff desires, a judgment will be entered dismissing the complaint, without costs.

*E. L. Spink*, for appellant.

*Robert B. Alling*, for respondent.

VAN BRUNT, P. J.—An examination of the evidence in this case shows that the conclusion arrived at by the court below, that it would be inequitable to decree a specific performance of the contract upon which this action is founded, was entirely correct, for the reasons stated in the opinion of the court below, and it is not necessary in the disposition of this appeal to rehearse the grounds which have been so well stated in that opinion.

It is necessary, however, to consider some exceptions which were taken and which are pressed upon our attention upon this appeal.

Objection was taken to the evidence offered in regard to an interview with Mr. Stern, a proposed purchaser of one of these houses, when the plaintiff was not present.

This conversation was entirely competent for the purpose of showing the circumstances under which the contract with Stern was entered into, and the inducements which led thereto. It was part and parcel of the whole transaction, and whether the plaintiff was present or not was entirely immaterial, as it was competent to show the circumstances under which the plaintiff or her agent acted.

The evidence as to the conversation between Mr. Cornwall and the defendant was entirely competent, as the defendant had a right to show what was stated to her at the time of her signing this contract, for the purpose of inducing her so to do, and the instructions that she gave in regard to its delivery. Merely because a person is entrusted with a contract which has already been signed, does not necessarily show that he is authorized to complete the execution of it by delivery, and the defendant had a right to show that Mr. Cornwall had no right to deliver the contract, or under what circumstances he was authorized so to act.

The conversation with Mr. Stern, to which the next exception is pointed, was entirely immaterial, but it did the

plaintiff no damage and is no reason for the granting of a new trial.

The defendant had a right to show what the houses cost, and what rent was procured, for the purpose of giving to the court some idea of the value of the premises, which was an important consideration, in view of the circumstances which surrounded the entering into this contract.

The exception to the fourth finding of fact, that Cornwall declined to receive an offer for an even exchange of property, is not well founded.

It is urged that Cornwall swears to having only told Mr. Thain this fact, and Mr. Thain nowhere testifies that he told the plaintiff anything of the kind. But it appears from the evidence that Mr. Thain in this transaction was entitled to act as the agent of the plaintiff, and the evidence clearly was sufficient to support the finding.

The fifth finding, to which exception is taken, that in order to induce Cornwall to enter into the contract he made certain statements, is evidently supported by the evidence, because as already stated Thain was the agent of the plaintiff, and was authorized by the plaintiff to make representations in respect to this property; and this evidence seems to have been ample to justify the court in making the finding.

The criticism in regard to the language of the finding, in that it states that the plaintiff represented that he had frequently been offered $23,500 apiece for the houses, and had frequently refused the same, may have more foundation in fact, because the evidence is not distinct upon this point that the plaintiff stated he had been more than once offered $23,500 apiece for the houses and had refused the same, although the evidence shows that Mr. Thain, the plaintiff's agent, represented to Cornwall that the plaintiff had told him that he had been offered $23,500 for one of the houses, and it appears also from the testimony that the plaintiff swore that he had had several offers of this kind and refused

the same.   It is immaterial to the force of the finding whether the plaintiff represented that he had one such offer or several. The balance of the finding is certainly sustained by the evidence, both of Thain and Cornwall.

It is true the plaintiff denies the representation, but the probabilities seem to be in favor of the truth of the finding.

The sixth finding to which exception is taken, that the plaintiff had a desk with Darling & Schwannecke, is also supported by evidence, Mr. Schwannecke swearing distinctly that the plaintiff had desk room in their office, and it appears conclusively that he had a sign there.

If the counsel had read the evidence in this case he would not have made the statement which appears in his brief, that this portion of the finding is absolutely unsupported by any evidence, and that it was simply imported from an unverified answer.   Counsel, in the preparation of their points upon facts, should be a little more careful in making strong statements of this kind, which are contrary to the truth.

The seventh finding excepted to is amply supported by the proof.

The conclusion in the eighth finding that Stern was put forward as a *bona fide* purchaser, when in reality he was not, was a fair deduction from the evidence.   The ninth finding is also equally well sustained; and the tenth, eleventh and twelfth findings may also fairly be derived from the evidence.

There is nothing in these exceptions which would call upon the court to reverse the judgment.

The defendant's agent, beyond question, was allured into making this contract by the holding out by the plaintiff and his duly authorized agent of inducements which could not be realized, and thus induced to enter into this inequitable contract which it is sought now to have specifically performed, and also to violate the instructions expressly given to him in regard to the delivery of the contract, which he

was bound to obey, and which affected his authority to act as the agent of the defendant. The judgment should be affirmed, with costs.

CULLEN, J., concurs.